IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LELAND ERVIN HAYNES,

    Petitioner,                  No. CIV S-05-1100 FCD KJM P

   vs.

DAVID L. RUNNELS, Warden,

    Respondent.              FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner is a state prison inmate proceeding with counsel with a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his Sacramento County conviction for sexual offenses against a child. He raises a single claim of prosecutorial misconduct.

I. <u>Background</u>

        Neither party has challenged the accuracy of the state Court of Appeal's recitation of the facts, a recitation which is consonant with this court's reading of the record:

> J.D. and defendant had previously dated and remained friends when, in December of 2000, they moved into an apartment with J.D.'s friend, K.C. Defendant and J.D. shared a bedroom with separate queen-size beds. J.D.'s mother, G.S., cared for J.D.'s twin six-year-old daughters (hereafter S. [fn.] and Sh.), during the week and the girls spent weekends with J.D. On Saturday, January 20, 2001, around 6:00 or 7:00 p.m. G.S. dropped her granddaughters off at J.D.'s.

1

1  [fn] The minor referred to as "S." is the sole victim,
2  as charged in the complaint, and is the younger of
   the twins.

3  Later that evening, J.D. and K.C. left and defendant stayed with S.
   and Sh.  S had fallen asleep in bed with her sister and when she
4  awoke, defendant was in the bed with them.  He rolled her over
   onto her stomach, pulled down his sweatpants and underwear and
5  pressed his naked "private parts" down in an up and down motion
   onto her buttocks area, through her nightgown.  He did this for a
6  few minutes.  He then rubbed her chest with his hands through her
   nightgown, reached underneath her nightgown and underwear and
7  rubbed her vagina with his fingers for approximately two minutes.
   He then pulled up his pants and fell asleep on top of her.  S. was
8  too afraid to say anything during the incident.  Sh. was awake and
   witnessed the entire assault.  Sh.'s account confirmed most of the
9  details given by S.  Sh. reported hearing S. tell defendant, "Stop, it
   hurts," but defendant continued for a few minutes before he pulled
10 up his pants and fell asleep with them in bed.

11 J.D. returned to the apartment around 8:00 or 9:00 a.m. on Sunday
   morning.  Defendant was watching television and the twins were
12 sleeping in his bed.  J.D. thought this was unusual, as they usually
   slept in her bed.  Later in the day, J.D. overheard Sh. tell defendant
13 "[he] better not hurt" her sister "again."  Defendant said he would
   not.
14
   Around 5:00 p.m. on Sunday, Sh. was in the living room watching
15 television, and S. was again in the bedroom sleeping.  When S.
   woke up, defendant was in the bed with her.  S. was lying on her
16 back.  Defendant pulled down his pants and underwear, climbed on
   top of S., pressed his penis against her vaginal area and moved up
17 and down.  S. had her nightgown on; defendant's rubbing was over
   the nightgown.  He also touched her legs and vaginal area with his
18 hand underneath her nightgown but over her underwear.  At this
   point, Sh. had entered the bedroom.  Again, Sh. confirmed S.'s
19 account.  Sh. again heard S. say, "Stop, you're hurting me."

20 G.S. came over around 6:00 p.m. or 7:00 p.m. Sunday evening to
   pick the girls up.  On their way home, Sh. told G.S. that she had
21 seen defendant take S. into the bedroom, pull her underwear down,
   and get on top of her in the bed.  S. screamed, told him to stop, and
22 said he was hurting her.  S. confirmed Sh.'s story.  Upon hearing
   this, G.S. returned to J.D.'s apartment.
23
   Back at the apartment, G.S. confronted defendant and accused him
24 of raping and hurting S.  He denied the accusations.  The police
   were called, but defendant left the apartment prior to their arrival.
25 /////

26 /////

2

> A January 22, 2001, physical examination of S. revealed bruising along the edge of her hymen, an abnormal finding for a child only six years old. In order to sustain such bruises, something had to have penetrated S.'s genitalia. Because such bruising usually heals within a few days, the examining nurse practitioner concluded the injury was recent. On January 31, 2001, S. was examined again. She was complaining of vaginal itching and discharge. Tests revealed that S. had chlamydia, a sexually transmitted disease. The 10-day period between the assault and the onset of chlamydia symptoms was normal. To cause chlamydia, seminal fluid must have penetrated S's vagina.

Lodged Document 3, Court of Appeal Opinion at 2-5.

II. Standards Under The AEDPA

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Federal habeas corpus relief also is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)" or "AEDPA"). See Ramirez v. Castro, 365 F.3d 755, 773-75 (9th Cir. 2004) (Ninth Circuit affirmed lower court's grant of habeas relief under 28 U.S.C. § 2254 after determining that petitioner was in custody in violation of his Eighth Amendment rights and that § 2254(d) does not preclude relief); see also Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003) (Supreme Court found relief precluded under § 2254(d) and therefore did not address the merits of petitioner's Eighth Amendment claim).[1] Courts are not required to

---

[1] In Bell v. Jarvis, 236 F.3d 149, 162 (4th Cir. 2000), the Fourth Circuit Court of Appeals held in a § 2254 action that "any independent opinions we offer on the merits of constitutional claims will have no determinative effect in the case before us . . . At best, it is constitutional dicta." However, to the extent Bell stands for the proposition that a § 2254 petitioner may obtain

address the merits of a particular claim, but may simply deny a habeas application on the ground that relief is precluded by 28 U.S.C. § 2254(d). Lockyer, 538 U.S. at 71 (overruling Van Tran v. Lindsey, 212 F.3d 1143, 1154-55 (9th Cir. 2000) in which the Ninth Circuit required district courts to review state court decisions for error before determining whether relief is precluded by § 2254(d)). It is the habeas petitioner's burden to show he is not precluded from obtaining relief by § 2254(d). See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different. As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002). A state court does not apply a rule different from the law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to cite or fails to indicate an awareness of federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002), cert. dismissed, 538 U.S.

---

relief simply by showing that § 2254(d) does not preclude his claim, this court disagrees. Title 28 U.S.C. § 2254(a) still requires that a habeas petitioner show that he is in custody in violation of the Constitution before he or she may obtain habeas relief. See Lockyer, 538 U.S. at 70-71; Ramirez, 365 F.3d at 773-75.

4

919 (2003).  Where the state court fails to give any reasoning whatsoever in support of the denial of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court must perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable.  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  In other words, the court assumes the state court applied the correct law, and analyzes whether the decision of the state court was based on an objectively unreasonable application of that law.

It is appropriate to look to lower federal court decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law.  See Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 1999).

III.  Analysis

The claim of prosecutorial misconduct is based on the following exchanges while the prosecutor was cross-examining petitioner:

> Q: [Y]ou heard Jamila testify that she called during the middle of the night to check on these girls, correct?
>
> A: Yes, sir.
>
> Q: Did she call?
>
> A: No, she didn't, sir.
>
> Q: Now, she lied?
>
> A: Yes, she did.
>
> MS. HUEY [defense counsel]: Objection as to the form of that question.  It's misconduct.  Move to strike it.
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> THE COURT: Objection's overruled.  The answer may stand.

RT 521-522.

> Q: And it's your testimony that those twins never left Jamila's bed, correct?
>
> A: No, they did not.

5

        Q: So when Jamila returned the next morning, her observation of them being in your bed is incorrect?

        MS. HUEY: Objection, calls for speculation.

        THE COURT: Overruled.

        Q: (By Mr. Oros [the prosecutor]). That's an incorrect observation?

        A: Yes, sir.

RT 523.

        Q: You are aware that both of the girls speak about an occasion during which one of them was locked outside of the bedroom?

        A: Yes, sir.

        Q: Is that incorrect?

        A: I would have to say so, sir.

RT 526.

        The prosecutor then asked a series of questions about the twins' accounts, asking petitioner if the events as recounted occurred. He then asked:

        Q: So in essence, then, these two twins are inaccurately or falsely accusing you of these crimes?

        A: They are, sir.

RT 527.

        Finally,

        Q: [Y]ou say you answered the door [when the grandmother returned]?

        A: Yes, I did.

        Q: That's inconsistent with what we have heard up to this point.

        A: It is sir.

        Q: Jamila–was Jamila and Gloria incorrect or inaccurate, because I think they both indicated that Jamila opened the door.

MS. HUEY: Objection, argumentative, and the same objection I had to the other questions.

THE COURT: Overruled.

Q: (By Mr. Oros). They were wrong?

A. Yes, they were, sir.

RT 531.

Outside the presence of the jury, trial counsel renewed her objection to the prosecutor's questions and agreed to provide case authority to the court. RT 550-552. After counsel filed points and authorities, the court entertained further argument. It ultimately concluded that while "this is an interesting issue," there was little other explanation for the conflict in the testimony except that someone was lying. RT 560-561. Accordingly, it found no prejudice, even if there was error, and denied the motion for a mistrial. RT 555-562. Counsel raised the issue again in a motion for a new trial, which was denied. CT 260-266; RT 838-839.

Petitioner pursued this issue on direct appeal. The Court of Appeal rejected it:

> . . . It seems logical to us that if a witness is prohibited from testifying about another's truthfulness on a particular occasion, a witness is also prohibited from testifying that another person lied on a particular occasion.
>
> In this case, however, that reasoning does not mean that the prosecutor committed misconduct by asking those questions.
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> Nor were the questions a deceptive or reprehensible method of persuasion or egregious. The prosecutor asked approximately five "was she lying" questions. However, it was obvious from the entirety of defendant's testimony that he disputed the truthfulness of the testimony of the other witnesses. Defendant expressly denied many of the specific matters testified to by the girls, their mother, and their grandmother. In addition, there were many other respects in which his testimony was inconsistent with their testimony. Defendant's testimony about these discrepancies

/////

/////

7

> between his answers and those of other witnesses implicitly told the jury that the testimony of the other witnesses was false on those points. The prosecutor's "was she lying" questions did little more than point out the obvious implication.

Lodged Document 3 at 9-11 (internal citations omitted).

The standard of review for prosecutorial misconduct in federal habeas cases is "the narrow one of due process, and not the broad exercise of supervisory power." Donnelly v. DeChristoforo, 416 U.S. 637, 642 (1974). To prevail on a claim of prosecutorial misconduct, petitioner must show that the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process" or by manipulating or misstating the evidence or implicating defendant's specific rights. Darden v. Wainwright, 477 U.S. 168, 181, 182 (1986); see also Hovey v. Ayers, 458 F.3d 892, 923 (9th Cir. 2006). "To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's rights to a fair trial." Greer v. Miller, 483 U.S. 756 (1987) (internal citation, quotation omitted).

As he did in the state courts, petitioner relies on United States v. Geston, 299 F.3d 1130 (9th Cir. 2002). In that case, the prosecutor asked two law enforcement witnesses whether government witnesses were lying. The Ninth Circuit said:

> These questions were improper because they compelled Groot and Garrett to offer opinions regarding the veracity of the government witnesses. . . . .
>
> We have held that it is reversible error for a witness to testify over objection whether a witness was telling the truth. It is the jurors' responsibility to determine credibility by assessing the witnesses and witness testimony in light of their own experience. Testimony regarding a witness' credibility is prohibited unless it is admissible as character evidence.

Id. at 1136 (internal citations and quotations omitted). The court reversed, finding that "where witness credibility was paramount, it was plain error for the court to allow the prosecutor to persist in asking witnesses to make improper comments upon the testimony of other witnesses."

Id. at 1137; compare United States v. Moreland, 509 F.3d 1201, 1213-14 (9th Cir. 2007) (prosecutor asked defendant if two prosecution witnesses were lying; error, but not reversible, because the witnesses were peripheral and credibility was not paramount).

Other Courts of Appeal also have condemned such questioning. In United States v. Boyd, 54 F.3d 868, 871 (D.C. Cir. 1995), the court found that the prosecutor acted improperly in asking the defendant why officers were "making this up" and putting their careers on the line "to get" him. As the court observed:

> Had she merely asked about Boyd's previous contact with the officers, allowing the jurors to draw their own conclusions regarding the witnesses' credibility, her examination would have been unobjectionable.

Id. The court found the error harmless, however, because the jury was instructed it was the sole judge of credibility, the challenged questions were of minimal importance, and there was little reason for the jury to disbelieve the officers' testimony. Id. at 872.

In United States v. Harris, 471 F.3d 507 (3d Cir. 2006), the court observed:

> [A]fter police witnesses and Harris gave incongruous testimony, the prosecutor cross-examined Harris about whether police witnesses had lied. As part of her cross-examination, the prosecutor restated various assertions of police witnesses that directly contradicted Harris' testimony and then asked Harris if it was his testimony that the police witnesses were lying.

Id. at 510. The court decided to

> follow our sister circuits and hold that asking one witness whether another is lying is inappropriate. Such questions invade the province of the jury and force a witness to testify as to something he cannot know, i.e., whether another is intentionally seeking to mislead the tribunal.

Id. at 511; see also United States v. Sullivan, 85 F.3d 743, 750 (1st Cir. 1996) ("was-the-witness-lying" questions constitute misconduct because it invades the jury's task to resolve credibility questions); United States v. Gaines, 170 F.3d 72, 81 (1st Cir. 1999) (improper for attorney to ask a witness whether another witness lied on the stand). The Harris court did not reverse, however,

9

because defense counsel had not objected; the error was not "plain," a term of federal jurisprudence, because the Supreme Court has not ruled on the propriety of such questions, and because it was unlikely that the questions affected the outcome of the proceedings. Harris, 471 F.3d at 512.

When a defendant contends that a prosecutor's question rendered his trial fundamentally unfair, it is important "as an initial matter to place th[e] remarks in context." Darden, 477 U.S. at 179. In this case, the questions came after petitioner had provided his own account of the weekend, one which differed in important respects from that provided by the prosecution witnesses; the context of the questions, then, was the prosecutor's attempt to underscore the differences in the accounts for the jury. As the Court of Appeal said, the questions only made explicit what was implicit in petitioner's testimony.

Moreover, in only one of the challenged passages did the prosecutor ask petitioner to characterize other testimony as lies: he asked petitioner if the twins' mother, Jamila, had "lied" in her account of calling during the night to check on the welfare of her daughters. RT 521. In the other instances, he asked petitioner if the twins were "inaccurately or falsely accusing him" (RT 526); whether Jamila's observation of the twins in petitioner's bed was "incorrect" (RT 523); whether the twins were "incorrect" when they testified that petitioner had locked the bedroom door during the second episode of molestation (RT 526); and whether Jamila and Gloria, the twins' mother and grandmother, were "wrong" when they testified that Jamila, not petitioner, had opened the door to Gloria's pounding. RT 531. The Second Circuit has recognized, when a prosecutor asks a witness whether he believes other witnesses were wrong, "[t]he witness was not required to choose between conceding the point or branding another

/////
/////
/////
/////

witness a liar." <u>Gaines</u>, 170 F.3d at 81. The same court has recognized that

> [a]sking a witness whether a previous witness who gave conflicting testimony is "mistaken" highlights the objective conflict without requiring the witness to condemn the prior witness as a purveyor of deliberate falsehood, i.e., a "liar."

<u>United States v. Gaind</u>, 31 F.3d 73, 77 (2d Cir. 1994). The prosecutor's questions in this case similarly allowed petitioner to suggest that the differences in testimony resulted from mistake or failure of memory rather than duplicity. Even his question about the twins' accusations did not, as petitioner alleges, require him to brand the seven-year-old victim as a liar (Pet. at 5), for it allowed petitioner to describe the accusations as inaccurate rather than false. His answer–"they are, sir"–did not unambiguously characterize the accusations as lies. As the Second Circuit recognizes, when a prosecutor avoids "the 'L' word," the likelihood of an impact on the fairness of the trial may be avoided or at least diminished. <u>Gaines</u>, 170 F.3d at 82.

      Here, there was one instance in which "the 'L' word" was used, when the prosecutor asked petitioner to characterize Jamila's testimony about her late-night call as a lie. That testimony was relatively unimportant to the jury's ultimate determination of the charges: whether Jamila called or simply ignored her children did not make it more or less likely that the twins' account of the molestation was correct.

      These instances of prosecutorial questioning did not "so infect the trial with unfairness" as to result in the denial of a fair trial. Moreover, any lingering impact the questioning may have had was dispelled by the court's instruction that the jurors were "the sole judges of the believability of a witness and the weight to be given to the testimony of each

/////

/////

/////

witness." RT 748; see Boyd, 54 F.3d at 872.[2]  The state Court of Appeal did not, therefore, apply federal constitutional law unreasonably in reaching the conclusion it did.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 14, 2008.

_____
U.S. MAGISTRATE JUDGE

2 hayn1100.157

---

[2] The Ninth Circuit has held that claims of prosecutorial misconduct must be evaluated for harmlessness under the standard of Brecht v. Abrahamson, 507 U.S. 619, 637 (1993), which requires the court to determine whether an error "had a substantial and injurious effect or influence in determining the jury's verdict."  See Shaw v. Terhune, 380 F.3d 473, 478 (9th Cir. 2004) (prosecutor relied on factually inconsistent theories in separate trials of co-perpetrators); Bains v. Cambra, 204 F.3d 964, 974 (9th Cir. 2000) (appeal to ethnic and religious prejudice). Brecht itself considered the prosecutor's questions about a defendant's silence following his arrest. Brecht 507 U.S. at 626.  In these cases, the prosecutors' questions implicated the defendants' substantive rights; application of the Brecht standard allows the court to evaluate the prejudice from these violations.  In the "witness-is-a-liar" cases, the claimed error is more broadly one of fairness.  The standard of Darden, 477 U.S. at 177, which requires the court to gauge the unfairness generally appears to have its own, built-in standard of prejudice.  Compare Jackson v. Calderon, 211 F.3d 1148, 1154 n.2 (9th Cir. 2000) (Brecht standard does not apply to ineffective assistance of counsel claims because the Strickland standard contains its own standard of prejudice).  To the extent Brecht applies, however, the result would not be different: the only time the prosecutor unambiguously asked petitioner whether another witness was lying, as noted above, was not about a highly disputed, highly significant issue at trial.  There was no substantial, injurious effect on the verdict.